**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS SLOANE, individually and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Act. No. 2:15-cv-01208-NBF |
| GULF INTERSTATE FIELD SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**GULF INTERSTATE FIELD SERVICES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Annette A. Idalski (*pro hac vice pending*)
F. Beau Howard (*pro hac vice pending*)
**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY**
191 Peachtree Street, NE, 34th floor
Atlanta, GA 30303
(404) 658-5386
annette.idalski@chamberlainlaw.com
beau.howard@chamberlainlaw.com

Timothy K. Lewis (I.D. No. 32199)
Keith E. Whitson (I.D. No. 69656)
Jonathan B. Skowron (I.D. No. 307558)
**SCHNADER HARRISON SEGAL & LEWIS LLP**
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222
(412) 577-5200
tlewis@Schnader.com
kwhitson@schnader.com
jskowron@schnader.com

*Counsel for Defendant Gulf Interstate Field Services, Inc.*

## I.     INTRODUCTION

Plaintiff Thomas Sloane has been underlined convicted at least 16 times for crimes of moral turpitude including forgery, burglary, and theft. Consistent with his history of dishonesty and disregard for the judicial system, Plaintiff has conjured up this lawsuit falsely alleging that he and others employed by Defendant Gulf Interstate Field Services ("GIFS") were denied overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"), and the Pennsylvania Minimum Wage Act, 43 P.S. §333.104(c) & 34 Pa. Code. §231.41 ("PMWA"). The lawsuit is a farce, however, because the Complaint directly contradicts the June 14, 2014 pay letter which Plaintiff received from GIFS and failed to reference in his Complaint. Plaintiff signed this letter acknowledging that he "completely underst[oo]d [his] rate of pay and compensation." This letter stated: he would receive a "guaranteed salary" annualized at $140,000; he was "hired as a full time oil & gas pipeline inspector" which is "an exempt position; and he was "not entitled to overtime pay." Perhaps even worse than making false allegations on his own behalf, he seeks to extend these falsehoods to numerous other employees by filing claims pursuant to Rule 23 and 216(b). Clearly, Plaintiff is unfit to represent a class given his criminal history. For all of these reasons, his frivolous Complaint does not meet the 12(b)(6) standard and must be dismissed.

## II.    STATEMENT OF FACTS

### A.     Plaintiff's Criminal History

Prior to his hire at GIFS, Plaintiff was a career criminal. From 1996 through 2011, he was repeatedly convicted and often incarcerated for a series of crimes. Most recently, Plaintiff was released from jail in November 2011 after serving two years for **felony** burglary of a building.

Plaintiff was first arrested in Texas in September 1996 for criminal trespass when he entered government property without permission; he was convicted in March, 1997. (*See* Exhibit A.) Plaintiff was next convicted of Driving While Intoxicated on January 2, 2001, and incarcerated on or about May 3, 2001. (*See* Exhibit B.) Plaintiff remained on community supervision, or probation, for more than three years. During his probation, Plaintiff was again

convicted on September 14, 2004, for driving with a suspended license. (*See* Exhibit C.) As a result of this conviction, Plaintiff's probation was continued until his "*unsatisfactory*" release from probation on May 11, 2005. (*See* Exhibit D.) Thereafter, Plaintiff engaged in a consistent pattern of criminal activity that resulted in his incarceration for most of 2006 and then off and on for the next six years until 2012. On June 22, 2006, Plaintiff was again convicted of Driving While Intoxicated (*see* Exhibit E) as well as Theft of Property (*see* Exhibit F). Plaintiff was sentenced to 45 days in jail and 15 months supervision. (*Id.*) Notably, while Plaintiff was incarcerated from June 22, 2006 through July 22, 2006, he was convicted of an earlier offense of driving with a suspended license in Galveston County, Texas. (*See* Exhibit G.)

Plaintiff remained on probation, or community supervision, from the time of his Theft and Driving While Intoxicated convictions until February 1, 2008, when he was yet again "*unsatisfactorily*" released from community supervision. (*See* Exhibit H.) Thereafter, Plaintiff was convicted at least three more times for driving with a suspended license between March 20, 2008 and August 21, 2008, and was incarcerated for 24 days. (*See* Exhibits I – K.)

On October 15, 2008—just two weeks after being released from jail—Plaintiff committed **felony** Burglary of a Building and Burglary of a Coin-Operated Machine. Plaintiff pled guilty to the former charge on November 12, 2008, and was incarcerated. (*See* Exhibit L.) Plaintiff pled guilty to the later **felony** Burglary offense on February 18, 2009, but was permitted to defer adjudication pending four years of supervised probation. (*See* Exhibit M.) However, true to his character, Plaintiff committed multiple probation violations, including another **felony** Burglary of a Building on June 24, 2010, in Travis County, Texas, when he entered an apartment complex clubhouse and attempted to steal a television that was bolted to the wall. (*See* Exhibit N.) Plaintiff was incarcerated for 60 days. (*Id.*)

Plaintiff's probation violations did not stop there. In 2010, Plaintiff was convicted at least six more times for: testing positive for marijuana, codeine and morphine use in Comal County, Texas on January 28, 2010 (Exhibit O); **Forging or Altering a Prescription** for a dangerous drug on February 14, 2010 (Exhibit Q); **evading arrest** and driving with a suspended license in

Hays County on March 25, 2010 (Exhibit O); and **Possession of Marijuana** in Bexar County, Texas on March 26, 2010 (Exhibit P). On October 27, 2010, Plaintiff was convicted a third time for <u>**felony**</u> Burglary of a Building and was incarcerated for 18 months from May, 2010, through November, 2011. (*See* Exhibit R.) Not surprisingly, Plaintiff's criminal behavior continued in jail. He was convicted of Criminal Mischief—a crime of dishonesty—on June 28, 2010, when he destroyed a sprinkler head in an attempt to flood his cell. (*See* Exhibit S.) Approximately two years later, Plaintiff became employed at GIFS.

      **B.**    <u>**Plaintiff's Employment at Gulf Interstate Field Services, Inc.**</u>

        **1.**    **Plaintiff Was a Highly Compensated, Salaried Employee**

GIFS provides construction management, pipeline and facility inspection, materials management and other staffing services for its oil and gas company clients. (Compl. ¶ 6.) Plaintiff worked at GIFS for <u>only six months</u> from April 11, 2014, through October 21, 2014. He was a pipeline inspector on a project run by Kinder Morgan, Inc. in Pennsylvania. (*See* Decl. of Cathie Kramer ¶ 3, November 4, 2015.) On April 11, 2014, Plaintiff received an offer letter which stated that he would be paid a salary of "$386/Calendar Day (as approved by Client)." (*Id.*, ¶ 4.) Two months later, on June 20, 2014, Plaintiff countersigned an additional pay letter confirming that he was employed in "a salaried exempt position" and was paid a "Fixed Salary" of "$386/Day – Guaranteed seven (7) days per week." (*Id.*, ¶ 5.) The pay letter also states:

> You are being hired as a full time oil & gas pipeline inspector. This is an exempt position, which means you are not entitled to overtime pay. You will be paid your guaranteed salary (stated above) if you are at the job site and ready and willing to work. You will not be paid while you are away from the job site for personal reasons. GIFS expects you to devote your full business time and best efforts in the performance of your job duties. In consideration of your services, you will be paid a salary.

> It is our GIFS' policy and practice to accurately compensate employees in compliance with all applicable state and federal laws, including the salary basis requirement of the FLSA. GIFS prohibits all improper deductions from the salaries of exempt employees. To ensure that you are paid properly for all time worked and that no improper deductions are made from your salary, you must enter all work time correctly.

> Please review your pay stub when you receive it to make sure it is correct. If you believe an Improper deduction from your salary has occurred or if you have any questions about your pay, immediately contact me at 713-850-3631 and the matter will be investigated. We will promptly make any corrections that are necessary, including reimbursement.

(Kramer Decl., Ex. 2.) At the bottom of the pay letter, Plaintiff signed an acknowledgement, stating, **"[t]his is to acknowledge that I have received a pay letter from Gulf Interstate Field Services and completely understand my rate of pay and compensation."** (*Id.*) Based on his pay records, Plaintiff was paid his full salary in the amount of $2,702 per week for every week he was employed by GIFS, except his first and last weeks when his salary was prorated. (*Id.*, ¶ 6.) Plaintiff's annualized salary was **$140,504**. (*Id.*, Ex. 2.) Plaintiff's Complaint, filed nearly a year after his employment ended, alleges none of these facts and cannot stand on falsehoods. Therefore, it must be dismissed as a matter of law.

## III.    ARGUMENT & CITATION OF AUTHORITY

### A.    Motion to Dismiss Standard

Federal Rule 12(b)(6) requires dismissal of a complaint that fails to state a claim for which relief may be granted. FED. R. CIV. P. 12(b)(6). Under the pleading requirements outlined by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A complaint satisfies this requirement only if there is "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where, as here, the "facts" alleged in a complaint are "merely consistent" with those minimally required to establish a defendant's liability, the complaint "stops short of the line between possibility and plausibility." *Id.*

**B.      The Entire Complaint Must be Dismissed Because Plaintiff Fails to Plead Sufficient Facts to State a Plausible Claim That He Was Misclassified as Exempt and Entitled to Overtime Pursuant to the FLSA and PMWA**

Plaintiff cannot state a plausible claim by pleading falsehoods. Plaintiff makes the false allegation in his Complaint that his employment arrangement with GIFS "does not include any minimum guarantee of a certain amount of pay which is to be paid regardless of the number of hours or days worked" and he is, therefore, a non-exempt employee entitled to overtime. (Compl. ¶ 26.) This contradicts his timesheets and pay letter to which he agreed and signed. Based on Plaintiff's own admissions, the following facts **cannot be disputed**:

- Plaintiff was employed by GIFS as a pipeline inspector (Compl. ¶¶ 4, 7, 18);
- Plaintiff was paid a salary, calculated based on a daily amount ($386) and guaranteed to be paid every calendar day of Plaintiff's employment (Kramer Decl. ¶ 5);
- Plaintiff's salary equals $2,702/week, or $140,504/year (annualized) (*Id.*, ¶ 6);
- Plaintiff was paid his guaranteed salary every two weeks without deductions for quality or quantity of work for his entire employment GIFS (*Id.*, ¶¶ 5-6); and
- Plaintiff signed a pay letter on June 20, 2014, in which he acknowledged that he would be paid as a salaried, exempt employee not entitled to overtime (*Id.*, Ex. 2).

There is no question that Plaintiff was a highly compensated employee exempt from overtime under the FLSA and PMWA. He cannot truthfully plead otherwise based on his pay letters, check stubs and the law.

The United States Department of Labor ("**DOL**") has issued administrative regulations which describe the applicable exemptions from the FLSA's overtime requirements. The three main exemptions are called the "white collar" exemptions, which include the executive exemption, the administrative exemption and the professional exemption. In 2004, the DOL added a new exemption for "highly compensated" employees, which relaxes the standards for the executive, administrative and professional exemptions. "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties" and making factors (3) & (4) of the test set forth below easy to achieve.[1]

---

[1] 29 C.F.R. § 541.601(c); *see also Allen v. Coil Tubing Services, L.L.C.*, 846 F.Supp.2d 678, 710-11 (S.D. Tex. 2012) (applying highly compensated exemption to oilfield service company's employees).

To establish the highly compensated exemption, the employer must show that he: (1) earned at least $100,000 of annualized income; (2) earned at least $455 per week on a salary basis; (3) primarily performed office or non-manual labor; and (4) customarily and regularly performed one or more of the exempt job duties of an exempt administrative employee.[2] **Each element is satisfied here** exempting Plaintiff from the FLSA/PMWA. Plaintiff has not and cannot plead sufficient facts such the Court could infer he is entitled to overtime.[3]

### 1. The Court Can Consider Plaintiff's Pay Letter, Timesheets and Paystubs When Analyzing the Motion to Dismiss

Generally, a motion to dismiss must be based upon the pleadings, documents attached to the pleadings and matters of public record, but in the Third Circuit, a district court may also consider authenticated documents which are either described in the pleadings, or upon which the pleadings are based.[4] *See* FED. R. CIV. P. 12(b)(6); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[w]e now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). For example, in *Pension Benefit Guaranty Corporation*, the plaintiff filed a complaint alleging that the defendant had failed to fund certain pension plans after selling off unprofitable businesses. *Id.* at 1194. The plaintiff's complaint was based in part on the sales contract for the businesses, but it did not attach the contract. *Id.* at 1196. The defendant attached a copy of the sales contract to the motion to dismiss. *Id.* The court ruled that when a complaint is based upon contractual documents, the defendant may attach those documents to its motion to dismiss without requiring the motion to be converted into a motion for summary judgment.[5] *Id.* **"Otherwise, a plaintiff with a legally deficient claim could**

---

[2] 29 C.F.R. § 541.601(a).

[3] The relevant provisions of the PMWA track those of the FLSA. *See, e.g., Pieretti v. Dent Enterprises, Inc.*, No. CIV.A. 11-2179, 2013 WL 754436, at *3 (E.D. Pa. Feb. 27, 2013) *aff'd sub nom. Pieretti v. Dent Enterprises*, 553 F. App'x 244 (3d Cir. 2014).

[4] If the Court desires to consider documents outside of the categories described above, the Court **must** convert the motion to dismiss into a motion for summary judgment and follow the procedure set forth in Rule 12(d) of the Federal Rules of Civil Procedure. *Lunn v. Prudential Ins. Co. of Am.*, 283 Fed. Appx. 940, 942 (3d Cir. 2008).

[5] S*ee Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("what is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited.")

survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (emphasis added). <u>This is the case here</u>.

In this Motion, Defendant GIFS relies upon a June 2014 letter executed by Plaintiff regarding his pay as well as Plaintiff's timesheets and paystubs, all of which have been authenticated, and none of which are in dispute. The Court may consider these documents because they are either directly referenced in the Complaint, or they form the basis for the allegations in the Complaint.[6] (*See* Compl. ¶ 25 (referencing offer letter from GIFS), ¶¶ 26-27 (alleging the existence of an employment agreement which does not guarantee compensation).)

### 2.     Plaintiff Meets the First Prong of the Highly Compensated Exemption Because His Annual Compensation Exceeds $100,000

If an employee has only worked part of the year, his earnings can be annualized to determine whether he meets the $100,000 threshold for the highly compensated exemption.[7] The relevant question is whether the employee was "on track" to earn at least $100,000.[8] Here, Plaintiff's pay letter and pay stubs demonstrate that he was on track to earn in excess of $140,000 per year. This fact cannot be disputed. Thus, Plaintiff plainly meets this element of the highly compensated exemption and cannot plead otherwise.

### 3.     Plaintiff Meets the Second Prong of the Highly Compensated Exemption Because He Was Guaranteed $386/Day and Always Earned at Least $455 Per Week

Plaintiff meets the salary basis test. First, Plaintiff's salary exceeded $455/week. It was calculated correctly and it was <u>guaranteed</u> despite his false allegation that he received a day rate with no guarantee. The regulations state that "[a]n exempt employee's earnings may be computed on … **a daily** … basis, without losing the exemption or violating the salary basis requirement, **if the employment arrangement also includes a guarantee of at least the**

---

[6] Because Plaintiff references one of his pay letters in Complaint paragraph 25, the Court should consider all of Plaintiff's pay letters.

[7] 29 C.F.R. § 541.601(b)(3) (allowing proration of earnings to determine whether the employee meets the highly compensated test); *Allen*, 846 F.Supp.2d at 710-11 (explaining, "[i]f an employee has not worked a full 52-week period, he still may qualify for the Highly Paid Employee Exemption if his annualized compensation equals in excess of $100,000").

[8] *Allen*, 846 F.Supp.2d at 710-11.

**minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked**, and a reasonable relationship exists between the guaranteed amount and the amount actually earned."[9] Plaintiff's pay letter states that he is paid a weekly salary of $2,702, calculated at the rate of $386 per day. (Kramer Decl. ¶ 5, Ex. 2.) It also states that Plaintiff is guaranteed to receive payment for each calendar day of his employment, which he did. (*Id.*)

Second, contrary to his false allegations, Plaintiff's salary was predetermined, as required by 29 C.F.R. § 541.604(b). The pay letter meets this requirement. Moreover, Plaintiff's pay stubs show that he received $5,404 in salary every two weeks, which is consistent with his pay letter and exceeds the $455/week threshold required by the regulations. (*Id.*, ¶ 6, Ex. 3.)

Third, to qualify as salary, Plaintiff's earnings must be paid "each pay period on a weekly, or less frequent basis."[10] This is met because Plaintiff is paid bi-weekly. (*Id.*)

Finally, an employee's pay must not be "subject to reduction because of variations in the quality or quantity of the work performed," although there is an exception for the first and final weeks of employment, which may be prorated.[11] Plaintiff was paid the same salary payment each pay period regardless of the number of days he worked, and this element of the test is met. Thus, Plaintiff satisfies all elements of the salary basis test. His false allegations that he was not paid a guaranteed, predetermined salary must be stricken.

### 4. Plaintiff Meets the Third Prong of the Highly Compensated Exemption Because His Primary Job Duty Includes the Performance of Non-Manual Work

To take advantage of the highly compensated exemption, an employee must have a primary job duty that ***includes*** the performance of office or non-manual work.[12] Plaintiff alleges that he "and the Classes are all blue collar workers who are primarily engaged in manual labor or basic office duties." (Compl. ¶ 21.) This is a conclusion as opposed to an allegation of fact.

---

[9] 29 C.F.R. § 541.604(b) (emphasis added).
[10] 29 C.F.R. § 541.602(a).
[11] 29 C.F.R. § 541.602(a).
[12] 29 C.F.R. § 541.601(d).

Plaintiff does not allege that his primary duty was to dig with a shovel, or to weld with a welder, or to do any other manual task. Moreover, it is not even possible from this allegation to determine whether Plaintiff is talking about himself, as an inspector, or "the Classes." (*Id.*) In fact, nowhere does Plaintiff allege any facts from which the Court could conclude what type of labor was performed or what Plaintiff's job duties were. Thus, Plaintiff's allegation that he or others performed "manual work" is insufficient to state a plausible claim.

Plaintiff admits that he worked as an inspector on an oil pipeline. Courts have consistently held oilfield inspection to be a non-manual, administrative job. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (oil pipeline inspectors were highly compensated, exempt administrative employees); *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir. 1988) (pipeline field inspector was an exempt administrative employee); *Brock v. On Shore Quality Control Specialists, Inc.*, Civ. Act. No. A–84–CA–603, 1987 WL 31308, pp. *1, *7-8 (W.D. Tex. Sept. 29, 1987), ("[t]here is no question that the primary duty of all the inspectors at issue consisted of performance of non-manual work directly related to management policies or general business operations of … Defendants' customers," and therefore that the exemption applied.); *Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 402 (6th Cir. 2004) ("[a]lthough Schaefer spends some of this time inspecting trucks, examining load bracings, inspecting shipping containers, and examining shipping labels, these 'inspection' tasks—even if not performed at his desk—are nonetheless not manual tasks").

### 5. Plaintiff Meets the Fourth Prong of the Highly Compensated Exemption Because He Customarily and Regularly Performs One or More of the Job Duties of an Exempt Administrative Employee

According to the DOL rules, "a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any **one or more** of the exempt duties or responsibilities of an executive, administrative or professional employee…"[13] The job duties analysis is relaxed when the employee is highly compensated. *See Trahan v. Honghua Am., LLC*,

---

[13] 29 C.F.R. § 541.601(c) (emphasis added).

Civ. Act. No. H-11-2271, 2013 WL 2617894, at *12 (S.D. Tex. June 10, 2013) ("[t]he highly compensated employee exemption does not require courts to engage in a rigorous analysis of the employee's job duties"). Further, if the employee is highly compensated, the administrative or executive task does not have to be his ***primary*** function, as long as he performs the task "*customarily and regularly*."[14] This means with "a frequency that must be greater than occasional but which, of course, may be less than constant."[15] "Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."[16]

Quality control and personnel management are administrative tasks.[17] Pipeline inspection is obviously quality control, as the point of the job is to inspect the suitability of construction work performed by others. Similar oilfield inspection work has been deemed administrative. *Zannikos*, 605 F. App'x at 360; *O'Dell*, 856 F.2d at 1454; *Brock*, 1987 WL 31308, pp. *1, *7-8. In *Zannikos*, in which inspectors did not qualify as exempt administrative employees, the Fifth Circuit found that Zannikos earned more than $100,000 annually, and "the district court correctly concluded that Zannikos fell within the 'highly compensated employee' exemption to the FLSA's overtime requirements." *Zannikos*, 605 F. App'x at 360.

In *O'Dell*, the plaintiff was a field inspector for Alyeska Pipeline Service Company, and the Ninth Circuit ruled based on the inspector's high level of compensation that the district court should have applied a truncated "Short Test" when analyzing the administrative exemption. *O'Dell*, 856 F.2d at 1454. This would have exempted the inspector from the FLSA's overtime requirements. *Id.* Notably, like the allegations of the Complaint in this case, O'Dell's inspection responsibilities included ensuring that the construction of the pipeline met standards set out in "control documents." *Id.* This did not preclude his exempt status. *Id.*

---

[14] *Id.*(emphasis added).
[15] *Trahan*, 2013 WL 2617894, at *12 (citing 29 C.F.R. §§ 541.601(a), 541.701).
[16] *Id.*
[17] 29 C.F.R. § 541.201(b).

Significantly, because GIFS only has to prove that Plaintiff engaged in one, as opposed to all, of the exempt duties of an administrative professional,[18] it is not necessary for Plaintiff to have exercised independent discretion or control with respect to matters of significance. Also significantly, even if a highly compensated employee is responsible for performing non-exempt tasks, he does not lose the exemption as long as he customarily and regularly performs an exempt administrative task as well.[19] Hence, highly compensated pipeline inspectors are routinely deemed exempt regardless of how routine or standardized their work might be.

Plaintiff's Complaint is insufficient to plead a claim for overtime because it does not allege that he performs non-exempt duties. Plaintiff only pleads **four** paragraphs of fact about his work, and each is a mere paraphrase of his job title: (1) "GIFS Interstate employs 'Field Workers,' including inspectors (such as Plaintiff) and Field Office Managers, who perform a variety of services, including inspection services on oil and gas pipelines for energy, public utility and pipeline companies" (Compl. ¶ 7); (2) "Plaintiff was employed as a pipeline inspector with GIFS Interstate in Pennsylvania and Oklahoma, performing and reviewing inspections on gas pipelines" (*Id.*, ¶18); (3) "GIFS Interstate employed Plaintiff to perform welding inspection on a pipeline in and around Pennsylvania" (*Id.*, ¶19); (4) "Plaintiff reviewed and aided colleagues in performing routine inspections of newly-laid pipes" (*Id.*, ¶20).

Based on these basic job titles, the Court has no factual basis from which to infer that Plaintiff performed any manual labor at all, much less that the alleged manual labor was his primary duty. The remainder of the Complaint is a paraphrase of the various statutes, regulations and case law. For example, Plaintiff alleges that his work "required the utilization of **techniques and procedures obtained primarily from industry manuals**" (Compl. ¶ 22) and that he "worked within the **closely prescribed limits** provided by GIFS Interstate…" (Compl. ¶ 23). He adds no facts to these conclusory allegations, which merely paraphrase 29 C.F.R. § 541.203(g).

---

[18] By claiming that Plaintiff is a highly compensated administrative employee, GIFS does not waive the right to present evidence at a later stage that Plaintiff may qualify for one or more other of the FLS exemptions.

[19] *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910, 943-44 (D. Minn. 2010).

For all of these reasons, it cannot be disputed that Plaintiff was a highly compensated employee, earning more than $140,000 per year on a salary basis. Plaintiff cannot circumvent the truth by disregarding his signed pay letter and misrepresenting his guaranteed salary. To the extent Plaintiff contends he was performing primarily manual labor, there simply is no meat to Plaintiff's Complaint, and the bare bones allegations which parrot the words of the regulations do not suffice to state a plausible claim that Plaintiff is entitled to overtime under the FLSA or PMWA.[20] "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. **We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests**." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). Indeed, it will be impossible for Plaintiff to re-plead a successful misclassification claim, which is why he plays coy with the allegations in his original Complaint.

### C. Plaintiff's Unjust Enrichment Claim (Count III) Must be Dismissed Because it is Preempted by Plaintiff's FLSA Claim

Plaintiff's unjust enrichment claim is preempted and must be dismissed because it is based upon the same facts and seeks the same relief as his FLSA claim. Based on the Third Circuit's decision in *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 263 (3d Cir. 2012), and the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193-94 (4th Cir. 2007), district courts in the Third Circuit have held that that an FLSA claim preempts state law causes of action (other than labor statutes) when they are based on the same facts and seek the same relief. *See Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 491 (D.N.J. 2014) (granting motion to dismiss because the plaintiff's FLSA claim preempted his state unjust enrichment and contract claims); *Szczachor v. All Granite & Marble Corp.*, Civ. Act. No. 13-395 SRC, 2014 WL 7365780, at *2 (D.N.J. Dec. 19, 2014) (dismissing plaintiff's common law

---

[20] "The Supreme Court in *Iqbal* explained that although a court must accept as true all of the factual allegations contained in a complaint, **that requirement does not apply to legal conclusions**; therefore, pleadings must include factual allegations to support the legal claims asserted." *Sandor v. Borough*, 92 F. Supp. 3d 355, 357 (W.D. Pa. 2015) (citing 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

contract and *quantum meruit* claims that were "based on the same factual allegations as the FLSA claim"); *Kelly v. Borough of Union Beach,* Civil No. 10–4124(AET), 2011 WL 551170, at *2 (D.N.J. Feb.8, 2011) ("most other district courts have similarly held that a plaintiff's common law claims are preempted by FLSA where the common law claims are duplicative of or based on the same facts as the plaintiff's FLSA claim").

Plaintiff's unjust enrichment claim is based on the same facts as his FLSA and PMWA claims. (Compl. ¶¶ 63-68.) Specifically, Plaintiff alleges that GIFS has been unjustly enriched by its alleged failure to pay overtime. (Compl. ¶¶ 66-67.) Plaintiff seeks to recover the same alleged unpaid overtime that he seeks to recover in his FLSA and PMWA claims. (Compl. ¶ 68.) There is, however, a significant distinction between the scope of relief that would be available under the Plaintiff's FLSA claim and his state unjust enrichment claim. While the limitations period for an FLSA claim is two years (three for willful violations), the limitations period for an unjust enrichment claim is four years. *Compare* 29 U.S.C. § 255(a), *with* 42 Pa. Cons. Stat. § 5525(4); *see Gannon v. Nat'l R.R. Passenger Corp.*, Civ. Act. No. 03-cv-4501, 2004 WL 1274384, at *2 (E.D. Pa. June 10, 2004) ("[a] four-year statute of limitations applies to claims under the quasi-contractual theory of unjust enrichment").

Plaintiff cannot use his unjust enrichment claim as a mechanism to extend the limitations period for his FLSA claim. *See Knepper*, 675 F.3d at 263 (citing *Anderson*, and noting that the Fourth Circuit "sensibly declined to allow the plaintiffs to use state non-labor laws to enforce the substantive provisions of the FLSA"); *Anderson*, 508 F.3d at 194-95 (the plaintiffs' state contract, fraud and negligence claims were preempted by his FLSA claim because they sought the same relief, based on the same facts, but had longer limitations periods).[21] Likewise, Plaintiff's unjust enrichment claim is preempted and must be dismissed.

---

[21] *See also Choimbol v. Fairfield Resorts, Inc.*, Civ. Act. No. 2:05-cv-463, 2006 WL 2631791, at *4-6 (E.D. Va. Sept.11, 2006); *Moeck v. Gray Supply Corp.*, Civ. Act. No. 03-cv-1950, 2006 WL 42368, at *2 (D. N.J. Jan.6, 2006); *Chen v. St. Beat Sportswear, Inc.*, 364 F.Supp.2d 269, 292-93 (E.D.N.Y. 2005); *Morrow v. Green Tree Servicing, L.L.C.*, 360 F.Supp.2d 1246, 1252-53 (M.D.Ala. 2005); *Sorensen v. CHT Corp.*, Civ. Act. No. 03-cv-1609(L), 2004 WL 442638, at *5-7 (N.D. Ill. Mar.9, 2004); *Johnston v. Davis Sec., Inc.*, 217 F.Supp.2d 1224, 1227-28 (D. Utah 2002); *Alexander v. Vesta Ins. Group, Inc.*, 147 F.Supp.2d 1223, 1240-41 (N.D. Ala. 2001); *Nettles v.*

### D. Plaintiff Must be Disqualified as a Rule 23 Class Representative

Plaintiff is a repeat criminal who has been convicted time and time again for crimes involving dishonesty, theft, forgery, destruction of property, and disregard for the rights and safety of others. He cannot possibly be trusted to represent a class of employees.

### 1. The Court Must Take Judicial Notice of Plaintiff's Criminal Record

The Court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute when that fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b). Even on a 12(b)(6) motion, "courts are permitted to take judicial notice of matters of public record, prior judicial opinions, and official court records." *Coulter v. Butler Cnty. Children & Youth Servs.*, Civ. Act. No. 12-cv-338, 2012 WL 4051239, at *1 n.1 (W.D. Pa. Sept. 13, 2012) *aff'd*, 512 F. App'x 145 (3d Cir. 2013). Courts routinely take judicial notice of prior criminal convictions, including when ruling on a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 201(d) ("[t]he court may take judicial notice at any stage of the proceeding"); *Wodarski v. Erie Office of Children & Youth Servs.*, Civ. Act. No. 10-cv-292, 2012 WL 602933, at *1 n.3 (W.D. Pa. Feb. 23, 2012) ("[t]his Court may take judicial notice of the state criminal proceedings in connection with this Rule 12(b)(6) adjudication") (citing *O'Boyle v. Braverman*, 337 Fed. Appx. 162, 164 (3rd Cir.2009)); *Gov't of Virgin Islands v. Testamark*, 528 F.2d 742, 743 (3d Cir. 1976) (upholding judicial notice of defendant's prior conviction). Out-of-state criminal records may be judicially noticed. *See Ross v. McElhenney*, Civ. Act. No. 07-cv-1022, 2007 WL 2702701, at *2 (W.D. Pa. Sept. 13, 2007) (taking judicial notice of Delaware criminal history, and explaining, "[n]either does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice"). Thus, the Court must take judicial notice of the certified copies of Plaintiff's criminal convictions, attached as ***Exhibits A-S***.

---

*Techplan Corp.*, 704 F.Supp. 95, 100 (D. S.C. 1988) (awarding summary judgment to employer on negligence claim as duplicative of FLSA claim).

### 2. Defendant GIFS May Challenge Plaintiff's Adequacy as a Class Representative in a Motion to Dismiss

A proposed class representative's failure to satisfy the requirements of Rule 23(a) may be determined *at any time* during the litigation, including in a motion to dismiss prior to class certification, and need not be raised only in response to a motion to certify the purported class. *See Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. 154, 171-174 (D. Kan. 1978); *see also Bailey v. Cumberland Cas. & Surety Co.*, 180 Fed. Appx. 862 (11th Cir. 2006) (finding that the trial court properly *dismissed* class claims *prior to certification*).[22] Indeed, at each stage of the litigation, courts have an ongoing obligation to ensure the purported class representative is adequate pursuant to Rule 23(a)(4). *Council 31 Am. Federation of State, County & Municipal Employees*, 1990 WL 103226, at *3 n.4 (N.D. Ill. 1990). This ongoing obligation is due, in part, to the purported class representative's fiduciary duty and responsibility to act as a trustee for the absent members of the purported class. *See Robin v. Doctors Officecenters Corp.*, 123 F.R.D. 579, 580 (N.D. Ill. 1988). Nothing can be gained – indeed only time wasted and claims of purported class members lost – by permitting an action to proceed once the evidence shows that the sole putative class representative fails to meet the prerequisites of Rule 23(a). The prerequisites of Rule 23(a) are not to be lightly reviewed; rather, district courts must "stringently" and "carefully" evaluate the legitimacy of a plaintiff's claim that he is a proper class representative. *Albertson's Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463-64 (10th Cir. 1974); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Accordingly, the Court must "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008).

### 3. Plaintiff is an Inadequate Class Representative

Certification of a class for Plaintiff's PMWA claims is governed by Pennsylvania Rule of Civil Procedure 1702 ("Rule 1702") and Rule 23 of the Federal Rules of Civil Procedure. As a

---

[22] Notably, as the Eastern District of Pennsylvania pointed out in *Buzoiu v. Risk Management Alternatives, Inc.*, consideration of the Rule 23(a) requirements, chiefly the plaintiff's inadequacy, is "strangely limited" to other circuits; however, such persuasive authority is highly instructive when not contrary to policies and holdings in the Third Circuit. 2004 WL 1505061, at *6 (E.D. Pa. June 14, 2004).

prerequisite to bringing a class action, Plaintiff must demonstrate that he can satisfy all four requirements of Rule 23(a): "numerosity," "commonality," "typicality" and "adequacy."[23] *Johnston v. HBO Film Management*, 265 F.3d 178, 184 (3d Cir. 2009). Plaintiff's extensive criminal history renders him both inadequate to serve as a class representative and, presumably, atypical of the class that he seeks to represent.

Courts routinely disqualify putative class representatives because of serious credibility issues such as lack of honesty or conscientiousness in order to protect absent class members from having their rights impacted negatively by an inadequate class representative.[24] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-79 (1977) (finding that it would violate due process to bind a class member to a ruling against an inadequate class representative); *Mielo v. Bob Evans Farms, Inc.*, 2015 WL 1299815, at *2 (W.D. Pa. Mar. 23, 2015); *Weitzner v. Vaccess Am. Inc.*, 2008 WL 4491534 (Pa. Com. Pl. June 27, 2008). A plaintiff's credibility is often a paramount consideration in determining his adequacy to serve as a class representative, as "a plaintiff with credibility problems may be considered to have interests antagonistic to the class." *Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010) (quoting *Windsor*, 521 U.S. at 625). Indeed, the Eastern and Western Districts of Pennsylvania have consistently denied class certification where the purported class representative lacked credibility. *See*, *e.g.*, *Dotson*, 2009 WL 1559813 (plaintiff was inadequate because he could not provide credible testimony); *Bontempo v. Wolpoff & Abramson, LLP*, 2008 WL 163051 (W.D. Pa. Jan. 15, 2008) (class representative is inadequate if he is dishonest or lacks candor on matters central to the litigation);

---

[23] Rule 1702 includes a fifth requirement, that plaintiff show "a class action provides a fair and efficient method for adjudication of the controversy…" Rule 1702(5). For the purposes of this Motion only, GIFS asserts only that Plaintiff cannot establish the prerequisites of typicality and adequacy. Rule 23(a)(3)-(4).

[24] *See Bishop v. Comm. On Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1288 (8th Cir. 1982) (finding that the res judicata effects of class judgment and other constitutional due process concerns cause the adequacy requirement to be viewed as the most important prerequisite to class certification); *Davidson v. Citizens Gas & Coke Utility*, 239 F.R.D. 225, 228 (S.D. Ind. 2006) (citing *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 42 (N.D. Cal. 1977)); *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986); *Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355-56 (S.D.N.Y. 2004); *In re Community Bank of N. Virginia*, 418 F.3d 277, 303 (3d Cir. 2005); *In re LILCO Sec. Litig.*, 111 F.R.D. 663, 672 (E.D.N.Y. 1986).

*Buzoiu*, 2004 WL 1505061 (class certification denied where the named plaintiff's "credibility is so open to question that it will likely harm her case").

Further, numerous courts reject the appointment of class representatives under Rule 23(a)(4) if they have been convicted of felonies or other crimes involving fraud and dishonesty. In *Valdez v. Cox Communications Las Vegas, Inc., et al.*, Civ. Act. No. 2:09-CV-01797-PMP-RJJ, United States District Court, Las Vegas, defendants moved to disqualify the plaintiff in a hybrid FLSA class/collective action because he had committed two crimes of dishonesty, including forgery, and stealing a credit card from a customer.[25] Based on his criminal history, the district court found that the plaintiff was inadequate to represent a Rule 23 class.[26] The court also ruled that the plaintiff could not serve as an FLSA class representative.[27] This decision is consistent with the rulings of several other courts, which have disqualified proposed class representatives based on their crimes of dishonesty.[28]

In *Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 2381797, 2006 U.S. Dist. LEXIS 57713 (W.D. Wash. 2006), the court had "serious concern" with the criminal history of one of the class representatives who had:

> a criminal record that is likely to seriously undermine his credibility. At least three of his felony convictions are recent, and at least two arise from a crime involving dishonesty. Under Fed. R. Evid. 609, Mr. Miller will likely be subject to multiple attacks on his credibility based on his past crimes. These attacks will likely severely limit Mr. Miller's ability to vigorously pursue the interests of absent class members. For these reasons, Mr. Miller is not an adequate class representative.

*Id.* at *19; *see also Davidson v. Citizens Gas & Coke Utility*, 239 F.R.D. 225, 228 (S.D. Ind. 2006) (disqualifying plaintiff representatives because they were previously convicted of felonies

---

[25] *See Valdez v. Cox Communications Las Vegas, Inc., et al.*, Civ. Act. No. 2:09-CV-01797-PMP-RJJ (D. Nev. Jun 20, 2011), Dkt. 82, ***Exhibit*** U.

[26] *Valdez v. Cox Commc'ns Las Vegas, Inc.*, Civ. Act. No. 2:09-CV-01797-PMP, 2011 WL 2463290, at *1 (D. Nev. June 20, 2011) ("[o]n June 30, 2010, this Court entered an Order (Doc. # 112) granting Defendants' motion to disqualify Plaintiff Joseph Valdez as a Class Representative").

[27] *Valdez*, 2011 WL 2463290, at *2 (declining to circulate notice of FLSA collective action).

[28] *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978); *Hall v. National Recovery Sys., Inc.*, 1996 WL 467512, *5 (M.D. Fla. 1996); *Armour v. City of Anniston*, 89 F.R.D. 331, 332 (N.D. Ala. 1980), aff'd, 654 F.2d 382 (5th Cir. 1981); *Apanewicz v. General Motors Corp.*, 80 F.R.D. 672, 678 (E.D. Pa. 1978) (quoting 7 Wright & Miller, Federal Practice and Procedure § 1766).

including burglary and theft); *Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 396-97 (S.D.N.Y. 1983) (criminal conviction of plaintiff's principal precluded plaintiff from being a class representative); *Weisman*, 78 F.R.D. at 670-71 ("Plaintiff's conviction and subsequent conduct here convince us that he lacks the 'honesty, conscientiousness, and other affirmative personal qualities' required of a class representative").

Courts have found plaintiffs to be inadequate even where they did not have criminal convictions but simply lacked credibility. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983); *see also Darvin v. International Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (holding credibility problems apparent from plaintiff's deposition indicate that he is not suitable to fulfill the obligations of a class representative); *Cohen v. Laiti*, 98 F.R.D. 581, 583-84 (E.D.N.Y. 1983) (disqualifying plaintiff because his deposition rendered his credibility subject to attack).

In this case, Plaintiff has 16 convictions spread over 15 years for various crimes, including felonies and misdemeanors involving theft, burglary, forgery, drugs, alcohol and other offenses. *See Exhibits A* through *S*. Plaintiff's Forgery conviction is of particular concern as the credibility and authenticity of any documents offered by Plaintiff will be called into serious question, to the great detriment of the purported class. *See Exhibit P*. Further, Plaintiff's history of burglary, forgery and criminal mischief illustrate his lack of honesty and credibility, characteristics that are essential for a plaintiff to adequately represent a purported class. *See Exhibits L-N, P, R-S.* Plaintiff's drug and alcohol offenses further show his lack of integrity and dependability. *See Exhibits B*, *E, G, L-N, P-S*.

These numerous crimes will likely be admissible against Plaintiff to show his lack of credibility. *See* FRE 609 (holding that convictions for crimes of dishonesty and felonies which occurred within the preceding ten year period are admissible against a plaintiff); *see also Utopia Entertainment, Inc.*, 2006 WL 548476 at *1 (citing *Xianglin SHI*, 2005 WL 1561438 at *4). Plaintiff's illustrated lack of credibility will, undoubtedly, detract from the main claims of the purported class. *See Dotson*, 2009 WL 1559813 at *4. Accordingly, the Court should find that

Plaintiff is incapable of satisfying the prerequisite of adequacy required by Rule 23(a)(4), and immediately disqualify him as a class representative.

### E.   Plaintiff Must be Disqualified from Acting as the Named Plaintiff for His Purported § 216(b) FLSA Collective Action

For a named plaintiff in a FLSA collective action to represent the proposed collective, he must be "similarly situated" to the class with respect to the alleged FLSA violations. *See* § 216(b); *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012). In *In Re FedEx Ground Package System, Inc.*, 662 F.Supp.2d 1069 (N.D. Ind. 2009), the federal district court said:

> Although the requirements of Rule 23 generally don't apply to certification of an FLSA collective action, inadequacy of representation is nevertheless an equitable consideration at issue in determining whether to certify a putative class. *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("Although FLSA § 216(b) does not expressly incorporate Rule 23(a)(4)'s adequacy-of-representation requirement, the adequacy of class counsel or a class representative is not necessarily irrelevant in a putative FLSA § 16(b) collective action because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented."). Problems exist regarding the adequacy of these named plaintiffs as representatives of this putative class.

*Id.* at 1082; *see also White v. Osmose, Inc.* 204 F.Supp.2d 1309, 1315 (M.D. Ala. 2002). FLSA collective actions are representative actions and, "'given that individuals who 'opt-in' to this proceeding will most likely be represented by the named-plaintiff's counsel, the [c]ourt has an equitable interest in ensuring that they are adequately represented.'" *White*, 204 F.Supp.2d at 1315. Thus, the Court must assess the adequacy of a named plaintiff's representation "because the court has an inherent interest in ensuring that opt-in plaintiffs are adequately represented." *Brown*, 222 F.R.D. at 682.

In *Valdez*, the district court disqualified the plaintiff from representing a Rule 23 class based on his state claim and then ultimately declined to circulate notice of the collective action under FLSA Section 216(b) because the plaintiff was a unsuitable representative. *See Valdez v. Cox Commc'ns Las Vegas, Inc.*, Civ. Act. No. 2:09-CV-01797-PMP, 2011 WL 2463290, at *1 (D. Nev. June 20, 2011) (decertifying FLSA collective action and recognizing that "[o]n June 30, 2010, this Court entered an Order (Doc. # 112) granting Defendants' motion to disqualify

Plaintiff Joseph Valdez as a Class Representative"). The same result should happen here. Plaintiff can never be similarly situated to the FLSA opt-ins because, presumably, none of GIFS's other welding inspectors have a similarly extensive criminal history that so seriously calls into question their credibility. Plaintiff's inadequacy, including his lack of credibility and integrity, will jeopardize the due process rights of the purported class or collective who will be bound by any judgment made in this case.

**F.**     **Plaintiff's Rule 23 and FLSA Collective Claims Must be Dismissed For Lack of a Class Representative**

The Rule 23 class claims and FLSA collective claims must be dismissed if Plaintiff is disqualified as a class and/or collective representative. There is no set of facts Plaintiff could present that would negate his extensive criminal history or resurrect his lack of candor to satisfy the adequacy and typicality requirements of Rule 23(a) or the similarly situated requirement of § 216(b). Accordingly, Plaintiff is not now—nor will he be at any later point in this litigation—capable of representing the purported class or collective. Dismissal is appropriate where, as here, there is no set of facts under which plaintiff could be entitled to the relief requested. Fed. R. Civ. P. 12(b)(6); *see also Smith*, 78 F.R.D. at 171-174 (dismissing class claims because of the unsuitability of the named plaintiff and the class counsel).

**IV.     CONCLUSION**

For the foregoing reasons, GIFS requests that this Court dismiss the Complaint in its entirety because Plaintiff has not and cannot state a claim for unpaid overtime, nor is he adequate to represent any Rule 23 class or any collective under the FLSA.

Respectfully submitted this 5th day of November, 2015.

**SCHNADER HARRISON SEGAL & LEWIS LLP**

*s/ Keith E. Whitson*
Timothy K. Lewis (I.D. No. 32199)
Keith E. Whitson (I.D. No. 69656)
Jonathan B. Skowron (I.D. No. 307558)
120 Fifth Avenue, Suite 2700

Pittsburgh, PA 15222
(412) 577-5200
tlewis@Schnader.com
kwhitson@schnader.com
jskowron@schnader.com

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY**

*s/ Annette A. Idalski*
Annette A. Idalski, *pro hac vice* pending
F. Beau Howard, *pro hac vice* pending
191 Peachtree Street, NE, 34th floor
Atlanta, GA 30303
(404) 658-5386
annette.idalski@chamberlainlaw.com
beau.howard@chamberlainlaw.com

*Counsel for Defendant Gulf Interstate Field Services, Inc.*

21

## CERITIFICATE OF SERVICE

I hereby certify that on this day a copy of the foregoing **Defendant Gulf Interstate Field Services, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint** was filed electronically with the Court's CM/ECF system which will send notifications to all parties and/or counsel of record, including:

Alexandra Koropey Piazza
Sarah R. Schalman-Bergen
Shanon J. Carson
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3063
(215) 875-4604 (fax)
apiazza@bm.net
sschalman-bergen@bm.net
scarson@bm.net

Richard J. (Rex) Burch
James A. Jones
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788
(713) 877-8065 (fax)
rburch@brucknerburch.com
jjones@brucknerburch.com

Respectfully submitted this 5th day of November, 2015

**SCHNADER HARRISON SEGAL & LEWIS LLP**

*s/ Keith E. Whitson*
Keith E. Whitson (I.D. No. 69656)

*Counsel for Defendant Gulf Interstate Field Services, Inc.*