IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


THOMAS SLOANE, individually and on
behalf of persons similarly situated,

                    Plaintiff,
                                              Civil Action

        vs.
                                              No. 15-1208

GULF INTERSTATE FIELD SERVICES, INC.,

                    Defendant.
_____

     Transcript of TELEPHONIC DISCOVERY STATUS CONFERENCE
proceedings recorded on Monday, April 4, 2016, in the United
States District Court, Pittsburgh, Pennsylvania, before
The Hon. Nora Barry Fischer, United States District Judge

APPEARANCES:

For the Plaintiff:        Sarah R. Schalman-Bergen, Esq.
                          Berger & Montague, P.C.
                          1622 Locust Street
                          Philadelphia, PA 19103-6365


For the Defendant:        Annette A. Idalski, Esq.
                          Peter N. Hall, Esq.
                          Chamberlain, Hrdlicka, White,
                            Williams & Aughtry
                          191 Peachtree Street, N.E.,
                          Atlanta, GA  30303




Court Reporter:           Deborah Rowe, RMR, CRR
                          700 Grant Street, Ste. 5300
                          Pittsburgh, PA  15219
                          (412) 471-2510




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2                              - - -

3              (3:30 p.m.; teleconference proceedings:)

4              THE COURT:  Hello.  This is Judge Fischer, and this

5    is the time and place for a discovery status conference in

6    Sloane versus Gulf Interstate Field Services, Inc., at Civil

7    Action No. 15-1208.

8              I'm presuming we have Sarah Schalman-Bergen and

9    also Ms. Idalski on the telephone.  We have a court reporter

10   present.  Nathan Catanese, as you know, is the law clerk

11   assigned, and he has dialed up this call.

12             I have read your joint report regarding status

13   conference.  I've also been provided with the Plaintiff's

14   amended second set of requests for production of documents

15   addressed to Defendant, Gulf Interstate Field Services, Inc.

16             I also received the prior Plaintiff's second set of

17   requests for production of documents addressed to Defendant,

18   Gulf Interstate Field Services, Inc.

19             Also at my request I received a rough draft

20   transcript of the Robert Sprick, S-p-r-i-c-k, deposition

21   dated March 25, Volume 1, and at my request the amended

22   notice of videotaped deposition of Defendant, Gulf Interstate

23   Field Services, Inc's., corporate designee pursuant to

24   Federal Rule of Civil Procedure 30(b)(6).

25             Furthermore, my clerk, Mr. Catanese, reached out to

1   counsel to see whether or not since they provided these

2   documents they've been able to make any further agreements.

3   I've been told that is not the case.

4         I'll also tell you at the outset the Court will

5   adjourn this call no later than 4:15 today because I have to

6   be at Pitt Law School at 4:45.

7         Now, with that, who wants to lead off the

8   discussion?  And recall, since we're on the telephone, you

9   need to identify yourself for our court reporter before you

10   speak.

11         MS. SCHALMAN-BERGEN:  Your Honor, this is Sarah

12   Schalman-Bergen for the Plaintiff.  I believe that there are

13   two related sets of disputes that we've identified in the

14   joint report for the status conference.

15         The first involves Plaintiff's second set of

16   requests for production in which there are I believe nine

17   requests for which Defendant has said that these requests are

18   not related to precertification issues and Plaintiff contend

19   are related to Rule 23 class certification and necessary for

20   that purpose.

21         And the second issue for the Court is that

22   Plaintiffs wanted to discuss the procedure for handling

23   objections to depositions on the grounds that the questions

24   are not related to certification.

25         At the deposition of Robert Sprick, defense counsel

1  instructed the witness not to answer a number of lines of

2  questioning on the grounds that the questions were not

3  related to class certification.

4          Plaintiff's contend that those questions are

5  related to class certification, and so we have both process

6  and substantive concerns, the substantive concerns primarily

7  being that we will not be able to obtain the discovery that

8  we think is needed for Rule 23 certification, and that

9  defense counsel will be able to bring up some issues that --

10 in response to our Rule 23 motion that we haven't had the

11 opportunity to get discovery on.

12         The process concerns, which I'm happy to address

13 any specific questions the Court has, is that the process of

14 defense counsel objecting at the deposition disrupts the

15 deposition and forces Plaintiff's counsel to kind of identify

16 the theory of the case that we're pursuing.  And in front of

17 the witness or in front of counsel, we think it's disruptive

18 and sort of shifts the burden to Plaintiffs in the manner of

19 conducting depositions and also is inefficient in that, if we

20 have a discovery dispute in the future, when we have to bring

21 everything to the Court during the deposition, those

22 depositions are time-consuming and expensive, and we think

23 there needs to be a different mechanism for addressing it

24 during the deposition.

25         So we wanted to raise those issues for the Court.

1    I'm happy to answer any specific questions that the Court has

2    about the substance of any of the disputed requests.

3           THE COURT:  Well, I think that there's no time like

4    the present.  Let's go first to the requests for production.

5    Tell me what it is that you want.  Ms. Idalski can tell me

6    why she won't produce it, and I'll rule.

7           MS. IDALSKI:  Your Honor, this is Annette Idalski.

8    Real quick, too, before we get into it, there are –– there

9    were 11 initial requests.  There were 51 requests served

10   after that.  So 51 from 34.  So if we are still at 45

11   requests, even if we knock out nine or allow them to get

12   responses on these nine, we're still ten or 11 requests over.

13   So we still have a lot to break through.  I just want to

14   state that before we get into the matter.

15          THE COURT:  Okay.  Miss Schalman-Bergen, start with

16   the requests, and tell me what it is that you want.

17          MS. SCHALMAN-BERGEN:  I believe the first disputed

18   request is No. 41.  And what that seeks is documents that the

19   individual or individuals who made the determination about

20   classifying the Pennsylvania class members as exempt reviewed

21   or relied upon.

22          So we believe that in 2014 Gulf Interstate

23   underwent a process by which it examined and determined that

24   all pipeline inspectors were exempt from the overtime

25   requirements, regardless of their geographic location,

1    specific project or client.

2           And the documents that Gulf relied on for that

3    classification we believe are relevant to commonality,

4    predominance, superiority, because Gulf made the decision

5    that the inspectors met one or both prongs of the applicable

6    exemptions on a classwide basis.

7           So while we disagree with their ultimate

8    assessments that the class members are exempt, the process

9    that they got there is helpful and we believe will tend to

10   demonstrate that there are essential issues that are common

11   to the class.

12          Our rationale I think for this is similar to some

13   of the other requests that we sought, but we can address

14   those each in turn.

15          THE COURT:  Okay.  Ms. Idalski?

16          MS. IDALSKI:  Yes, Your Honor.  Number one, counsel

17   did not ask the 30(b)(6) witness any questions with respect

18   to pay or exemptions or policy, and they had access to

19   Mr. Sprick but did not ask him any of these questions.

20   That's number one.

21          Number two, all of the nine, including No. 41,

22   you'll see there's a common theme as to who did you talk to

23   to come up with your, you know, classification of exempt?

24   Which documents did you rely on?  What investigation did you

25   do?  Did you have a Department of Labor complaint?  Did you

1    have any prior lawsuits?

2              All of these things relate to willfulness and

3    whether or not the company willfully knew all along

4    supposedly or allegedly that they should have been paying

5    hourly and instead paid based on the exemption status.

6              So these all go to -- and they're very standard and

7    merit-based discovery.  They all go to the willfulness and

8    the liquidated damages prong.  So whether or not Gulf

9    Interstate -- number one, we contend and will be able to show

10   that these inspectors were always paid exempt.  Nothing was

11   changed.

12             They clarified their pay letter because, you know,

13   obviously these Plaintiffs' attorneys were misconstruing it.

14   But -- and that's it.  So this line of questioning regarding,

15   you know, when we met with, you know, Rich Burch initially,

16   and he came over to your office to talk about settlement, did

17   you change your policy, and what did you rely on, all of that

18   relates to this willfulness argument.

19             So I don't understand from counsel how this could

20   possibly relate to commonality and typicality under Rule 23

21   or similarly situated under 216(d).

22             THE COURT:  Ms. Schalman-Bergen?

23             MS. SCHALMAN-BERGEN:  Your Honor, while certainly

24   it touches on willfulness, it's also relevant to the process

25   by which they claim to classify all class members as exempt.

1          Gulf Interstate seems to believe that they could

2     make a blanket classification of all class members of all

3     pipeline inspectors; and so to the extent they're going to

4     argue that individualized issues predominate with respect to

5     the ultimate question, I believe that we're entitled to

6     documents that show how they themselves determined that there

7     wasn't any individualized issues with respect to how they

8     classified the pipeline inspectors as exempt.

9          Now, if defense counsel -- I mean one way that we

10    could deal with this is if defense counsel wants to stipulate

11    that certain things are not relevant -- I just want to make

12    sure that we're able to present to the Court sufficient

13    information to satisfy the Third Circuit Court's requirements

14    that we identify common issues and that, as Your Honor knows,

15    the Third Circuit has said that there is a merits-based

16    inquiry to all of this.

17         So we just want to make sure that we have the

18    information we need to be able to satisfy our burdens under

19    the applicable case law.

20         THE COURT:  Okay.  Anything further, Ms. Idalski?

21         MS. IDALSKI:  Only that I don't -- I still don't

22    understand where Plaintiff's counsel is coming from on this

23    as it relates specifically to what did you do in the past to

24    come up with your pay plan?  And frankly what is -- the

25    question what is your pay plan has not been asked to any of

1    our witnesses in any of these Interrogatories or requests.

2    So we're jumping ahead to what did you do to come up with the

3    pay plan when we hadn't even been asked the question what is

4    the pay plan?

5            THE COURT:  Well, I have read all of Mr. Sprick.  I

6    understood this was Volume I.  I understood Mr. Sprick was

7    going to have another session.  Has that been scheduled?

8            MS. IDALSKI:  That was not our understanding, Your

9    Honor.  He wasn't asked any questions about pay whatsoever.

10   And the counsel ended the deposition -- granted, it was

11   getting toward the holiday weekend, but still, I think we

12   ended the deposition with the holiday.  It was Friday.  Good

13   Friday.  We still ended the deposition early.

14           And again, they've had Mr. Sprick since -- this is

15   the second time they've had him.  If they want to ask him

16   questions about what is the pay policy, I think that that's

17   absolutely fair game.

18           But, you know, who did you talk to in coming up

19   with the policy?  Did you rely on a regulation?  Did you talk

20   to counsel in coming up with a policy?  All that goes to good

21   faith and the willfulness argument and has nothing to do with

22   precertification discovery.

23           THE COURT:  I'm looking at page 88 of the

24   transcript, and Miss Schalman-Bergen says, "Okay, Mr. Sprick.

25   Thank you for your testimony today.  I'm going to hold open

1    the deposition because there are a tremendous number of

2    questions which Ms. Idalski would not permit you to respond

3    to.  So we believe they are all responsive to certification

4    issues.  But we don't need to fight about them right now, so

5    we'll reserve the right to call you back in when these issues

6    can be resolved, and I wish you a very happy Easter weekend."

7              So as I read it, this deposition is still open,

8    number one.

9              Number two, relative to documents reviewed and/or

10   relied upon, that's what the request is.  What, Ms.

11   Schalman-Bergen, do you expect to find in terms of these

12   documents that may have been reviewed?

13             MS. SCHALMAN-BERGEN:  Your Honor, we would expect

14   that the documents reviewed will identify that Gulf

15   Interstate made its decision about the exemption status both

16   on the salary basis prong and on the duties prong with

17   respect to all inspectors and that it was able to make that

18   determination without individualized inquiries into each and

19   every inspector, or maybe they reviewed a survey of duties.

20             I quite frankly am not sure what process they

21   undertook.  We weren't permitted to ask about that at the

22   deposition.

23             We did have a deposition of Ms. Kramer earlier in

24   the day in which we talked extensively about their pay

25   practices.  But with respect to the documents that they

1    reviewed, I would expect that the process that they underwent

2    will show that the exemption question can be resolved on a

3    common basis and will identify common questions that can be

4    certified pursuant to Rule 23, as the Supreme Court has

5    recently ruled in the Tyson case.

6         MS. IDALSKI:  Your Honor, therein lies the problem.

7    They're missing the point that they have to show that

8    decision was wrong.  Of course, the company believes that

9    these inspectors are all exempt, and they all have guaranteed

10   pay, and they all perform exempt duties.  There's nothing

11   wrong with that.  That's perfectly legal.  That does not

12   certify a class, particularly when it's legal.  I don't

13   understand that at all.

14        MS. SCHALMAN-BERGEN:  Your Honor, each of these

15   deps –– this is Miss Schalman-Bergen again –– I would say are

16   bricks in the discovery process.  And so I think part of the

17   problem here is that defense counsel has specific questions

18   that they want us to be asking about, but we should be

19   permitted to take the discovery that we need in the method

20   that we need in a manner that's efficient and proportional

21   certainly.

22        But the process by which Gulf Interstate classified

23   them, by which they made pay policy changes, so if after the

24   meeting with Mr. Burch, Gulf Interstate reviewed their pay

25   policies and sent out a letter to all inspectors doing what

1    it believed is clarifying the pay policy, we have a different

2    take on that.

3         We believe that they were attempting to change the

4    pay policy, and we contest that it was done properly.  We

5    still contend that they violate the law.

6         But for class certification purposes, what we're

7    trying to establish is that there are common questions that

8    predominated over the litigation and can be tried on a common

9    basis.  And so to the extent Gulf Interstate believes that

10   there were common issues between these inspectors such that

11   they could classify them all as exempt, make clarifications

12   in their words or tweaks to their pay policy and send out

13   supplemental letters to all inspectors, we believe that that

14   goes towards demonstrating that this can be done and can be

15   tried on a class basis.

16        MS. IDALSKI:  And Your Honor, this is Annette

17   Idalski.  Two things.  Number one, that is incorrect.  Even

18   if Gulf Interstate changed its policy, that would be called

19   mitigation of damages.  And in a lot of these cases -- and

20   that didn't happen in this case.  But I've had other cases

21   where we believed our workers were exempt; and for purposes

22   of the litigation, because we wanted to mitigate damages, we

23   changed the pay plan.  And that is never used against the

24   company.  So number one, that wouldn't even be admissible

25   evidence.

13

```
 1              And number two, here's what I would suggest.  If
 2   Plaintiff wants to know all about Defendant's policies, its
 3   exempt policies, when it started and how it came about, ask
 4   Mr. Sprick.  He's there.  He's available for questioning.  He
 5   wasn't asked a single question on who came up with the pay
 6   policy?  How did it start?  You know, what did you base it
 7   on?  And I think that's a more appropriate way, if that's
 8   what Plaintiff's counsel wants to know.
 9              THE COURT:  Anything else?  Go ahead.
10              MS. SCHALMAN-BERGEN:  Your Honor, I would just
11   say -- this is Miss Schalman-Bergen.  There are many avenues
12   of discovery that we can pursue.  You know, Miss Idalski
13   identified certain topics that were blocked off as not
14   relevant to Rule 23 precertification; but we also need the
15   documents that were requested to ask the witnesses,
16   Mr. Sprick or any other, about them.
17              So I don't believe that our discovery should be
18   limited simply to the deposition testimony when we need these
19   documents in order to discuss those decisions with the
20   witnesses.  That's all I would say.
21              THE COURT:  Okay.  Now, first off,
22   Miss Schalman-Bergen, as you know, the rules changed in
23   December.  And everything is supposed to be proportional.
24   And I understand there's some District Judges in New Jersey
25   and also in Delaware that have put frowns on the language
```

1    "any and all documents."  And every one of your requests is

2    that broad.

3           Secondly, to the extent that Mr. Sprick is relying

4    on any documents for his deposition, were those documents all

5    produced at his deposition, Ms. Idalski?

6           MS. IDALSKI:  No.  None were requested.

7           THE COURT:  Oh, none were requested?  So there was

8    no request to produce with Mr. Sprick's deposition notice?

9           MS. IDALSKI:  No, Your Honor.  This is Annette.

10          THE COURT:  Well, that would have been helpful.

11   Secondly, relative to these requests for production, and for

12   example, I'm looking at 41.  There is reference to the

13   persons identified in Interrogatory No. 13, but neither of

14   you have saw fit to give me Interrogatory No. 13 and the

15   Answers.  And to prepare for today's proceeding, I've had to

16   go back to the well repeatedly asking you two for documents.

17          And you know, if you want me to referee your

18   discovery disputes, from here on out you're going to give me

19   an agenda, and you're going to give me all the attachments

20   that I need.

21          Relative to this discovery, I overruled the

22   objection, and Ms. Idalski, you're going to produce whatever

23   you think is responsive to 41.

24          And if you have a problem with something, then

25   you're going to give Miss Schalman-Bergen a detailed

1   privilege log.  Whether it's attorney-client privileged or

2   what have you, you're going to do that.

3          Okay.  Let's move on.  No. 42.

4          MS. SCHALMAN-BERGEN:  I think it's 44?

5          THE COURT:  Well, okay.  Let's move on to 44.

6   Disputed.  As discussed in Section 1D, 1C, request for

7   production, all contracts or scope of work documents you

8   entered into with any outside consultant that relates to the

9   classification of Pennsylvania class members as exempt or

10   nonexempt, including documents related to considerations in

11   changing the classification of these positions.

12          Now, if what Ms. Idalski has to say is true,

13   there's been no change; right, Ms. Idalski?

14          MS. IDALSKI:  Correct.

15          THE COURT:  So why isn't the answer there are no

16   documents?  Why aren't we just saying that?

17          MS. IDALSKI:  Well, we very well may, Your Honor.

18          THE COURT:  Well, you will either say yes or no to

19   that question.  And if it's no, you're going to say that.

20   And you're going to sign your name as the counsel.

21          Okay.  Let's move on to 45.  As clarified and

22   combined with request Nos. 46 and 47, all plan documents for

23   GIFS 401(k) plans during the relevant time period and all

24   documents or correspondences, including E-mails generated, in

25   connection with GIFS's annual testing of eligibility or

1    nondiscrimination for its 401(k) retirement plans.

2            Now, Mr. Sprick was examined a little bit about

3    401(k).  What else do you need to know, Miss Schalman-Bergen,

4    about the 401(k)s?

5            MS. SCHALMAN-BERGEN:  Your Honor, here in this case

6    there's an issue that Gulf Interstate has not kept accurate

7    records of the hours that inspectors worked.  We believe that

8    in opposition to class certification, Gulf Interstate may

9    challenge that there are individual issues that predominate

10   with respect to the number of hours that inspectors worked.

11           The IRS implemented rules to permit

12   nondiscrimination testing and eligibility of the 401(k)

13   plans, and part of that requires the employers to undergo

14   annual testing by a method specified in the plan document,

15   and as part of this testing the companies are required to

16   count the number of hours that each of its employees work.

17           The way that Gulf Interstate counted the hours that

18   pipeline inspectors worked in a year for purposes of the IRS

19   we believe is relevant to establishing the reasonable

20   inference of the number of hours that the inspectors worked

21   pursuant to the Anderson v. Mt. Clemens decision, the Tyson

22   decision that the Supreme Court recently discussed.

23           At the deposition when I tried to ask these

24   questions, Ms. Idalski instructed the witness not to answer.

25   We tried to meet and confer on the issue.  It's sort of

1  difficult to assert your mental impressions about the

2  relevance of something at the time.  I tried to do my best.

3  But we do believe that these documents are relevant and that

4  they will help to show the hours worked by the employees,

5  that that can be resolved on a common basis.

6          THE COURT:  Okay.  Ms. Idalski, do you have

7  anything further to say on this point?  I read --

8          MS. IDALSKI:  Yes.

9          THE COURT:  I read all of your objections at page

10  66, 67 and the like.  By the way, I think I mentioned to all

11  of you, this Court is guided by Judge Gawthrop.  And when

12  you're in a Federal deposition setting, you're not supposed

13  to be making lots of speaking objections.  Your witness

14  should be prepared ready to go.

15          MS. IDALSKI:  Your Honor, if I may, on this issue,

16  this is not relevant to precertification issues, and it's not

17  relevant to anything.  And I was trying to understand where

18  Miss Schalman-Bergen was coming from, not having the code in

19  front of me.  This was not -- is something that was listed on

20  the Exhibit A as to an area that we would be discussing.  And

21  there was nothing about ERISA.

22          We were not prepared to discuss it; and then going

23  back and doing research with my team, it quite frankly took

24  us a while to figure out where this was coming from.  We

25  still don't understand it, but I'll make it simple, that

1    hours of service with respect to ERISA and the FLSA are

2    completely different.

3            If you look under ERISA, hours of service are used

4    to do nondiscrimination testing and for plan eligibility

5    requirements, but they're different because hours of service

6    under ERISA are different than hours worked under the FLSA.

7            So like for example, under ERISA when you're

8    looking at calculating hours of service, you would calculate

9    vacation, you know, time off, all of that, holiday, illness,

10   layoff, jury duty, military duty, leaves of absence.  This is

11   29 CFR 2530.200b-2(a)(2).  Under the FLSA you look at hours

12   actually worked.  So you would not be including any time off.

13           So this would not be relevant to anything, not

14   precertification issues or any other individualized issues

15   that ends up being an area that we use as a defense later.

16           THE COURT:  Okay.  Ms. Schalman-Bergen, anything

17   else on this one?

18           MS. SCHALMAN-BERGEN:  No.  I would just say --

19   well, I certainly acknowledge that the legal standards may be

20   different.  I want to make sure that we can address any

21   concerns that Gulf Interstate raises about individualized

22   issues with respect to the number of hours, notwithstanding

23   that they didn't properly track the hours worked.

24           So while -- you know, I can't tell you at this

25   moment, without seeing what the documents say and seeing the

1    method by which they did that, you know, exactly whether it

2    will track one for one, but I would say that they have an

3    obligation under the IRS testing rules to count the number of

4    hours, and we're interested in the method by which they did

5    that and whether it was common for all pipeline inspectors.

6           THE COURT:  Didn't you have a chance to ask those

7    kind of questions to Sprick and to Kramer?

8           MS. SCHALMAN-BERGEN:  Your Honor, I attempted to

9    ask a number of questions of Mr. Sprick, and they were each

10   met with a refusal to answer.  So I --

11          THE COURT:  Well, I read -- excuse me.  I read this

12   entire transcript this morning.  And there were a number of

13   objections.  They came more late than they came early.

14          Also, you had a prior transcript.  I don't have the

15   benefit of that.  These people have been deposed before.  You

16   have the benefit of all of that.

17          And to that end, at this time I am not going to

18   require Gulf Interstate to provide you with all this 401(k)

19   information.  You're going to have to make a better showing

20   why you need it.

21          And to that end, Sprick and Kramer, to the extent

22   she hasn't been asked, they need to be asked these questions

23   about how these pays were actually computed, how the records

24   were kept and the like.  And if it means you have to depose

25   all these other people that Sprick listed, then so be it.

1          So then we're going to move on to 47 is withdrawn.

2    So that's part of this 401(k).  As I said, you're not -- Gulf

3    Interstate is not going to produce those at this time.

4          The next couple are withdrawn.  On 50 we still have

5    a dispute.  All documents constituting or concerning any

6    studies, reports, analyses, surveys, questionnaires or

7    statements conducted or obtained by GIFS that evaluate,

8    assess or make recommendations about the payment of overtime

9    compensation to class members, including, without limitation,

10   GIFS's investigation of the allegations asserted in this

11   case.

12         Well, as I read that, that does not seem to relate

13   to precertification.  It seems to me there's a lot of work

14   product and attorney-client privilege in there.

15         Ms. Schalman-Bergen, are you going to try to

16   persuade me otherwise?

17         MS. SCHALMAN-BERGEN:  Your Honor, I would simply

18   say that, you know, with respect to these issues, what we're

19   trying to do is ensure that we have the discovery necessary

20   to defend any challenges at certification, and as you're

21   aware, there have been rulings that merit is relevant at that

22   stage.  And so that's what we're seeking to address.

23         We also have an unjust enrichment claim that I

24   think is relevant to this specific request, demonstrating the

25   scheme that we believe that Gulf Interstate has done here.

1            THE COURT:  What scheme is that?

2            MS. SCHALMAN-BERGEN:  The scheme of misclassifying

3    its employees to deny them overtime under the law.

4            THE COURT:  Oh, okay.  All right.  Ms. Idalski,

5    what do you say about request 50?

6            MS. IDALSKI:  Your Honor, I agree.  I mean all of

7    this goes to -- I mean reports, analyses, all of this is

8    going to be privileged if it even exists.  I don't know if it

9    exists.

10           THE COURT:  Well, you told me earlier that there's

11   been no changes, number one.  If that's the case, that's what

12   you're going to say.

13           Number two, I'm surprised at this stage you don't

14   know if it does or doesn't exist.  You have this, and you've

15   had it.  You have a team.  You should have at least asked

16   your client.

17           At this point my ruling is that request No. 50 is

18   not going to be answered because it appears to me that this

19   is largely work product, attorney-client privilege and the

20   like.

21           And to the extent that there hasn't been any

22   change -- let's just put it on the table.  There hasn't been

23   any change, and stop playing the games.

24           Request for 51 has been narrowed.  Is there still

25   dispute?

1              MS. SCHALMAN-BERGEN:  No, Your Honor.

2              THE COURT:  Okay.  So we don't need to deal with

3    that?  52 there doesn't seem to be any issue.  53, 54 is more

4    disputes.  All documents constituting or concerning any

5    inquiries, investigations, complaints, administrative

6    charges, lawsuits or claims of any kind by or from any

7    persons, blah, blah, blah, in the past ten years regarding

8    the alleged failure of GIFS to maintain accurate time

9    records, to pay employees for all hours worked and to pay

10   overtime compensation under any State or Federal law.

11             And Defendant says that this is not related to

12   precertification issues.  Well, it could be.  Has anybody

13   done a docket search on GIFS?  Has anybody done an FOIA

14   request on Gulf Interstate?

15             MS. SCHALMAN-BERGEN:  We've done a docket search,

16   but I don't believe we sent a FOIA request.

17             THE COURT:  Well, a FOIA request is a cheap way to

18   do investigation and discovery.  It's a lot less expensive

19   than attorneys dickering over requests.

20             So I think, Miss Schalman-Bergen, the first thing

21   you're going to do is an FOIA request.  It should have been

22   done a long time ago in preparation for this lawsuit.

23             Now, to that end, Ms. Idalski might want to check

24   with her client first.  You know, it's always helpful,

25   Ms. Idalski, if there's bad news out there, that you be the

23

1    bearer of the bad news rather than have your opposition

2    spring the bad news on you.  So if there are such

3    investigations by any entity against your client, your client

4    and you should probably know that first.

5            But in the meantime, Ms. Schalman-Bergen is going

6    to do a FOIA request.  That's how we're going to handle that.

7            Then we're going to move on to request for

8    production 57.  Section 1(b)(1)(C) again.  All communications

9    between GIFS and its attorneys relating to any requests for

10   advice and/or provision of advice regarding the legality of

11   its compensation paid to Pennsylvania class members.  If you

12   deem any such communication as privileged, provide a

13   privileged log that complies with the Federal Rules of Civil

14   Procedure.

15           And it seems to me that this is way beyond what

16   should be the scope of proper discovery here.

17   Miss Schalman-Bergen, tell me why it is not.

18           MS. SCHALMAN-BERGEN:  Your Honor, in defense to

19   this action, Gulf Interstate has raised affirmative defenses

20   relating to its classification decision.  And at certain

21   times defense -- as part of that defense the Defendant will

22   choose to waive the privilege if they're asserting an advice

23   of counsel defense.

24           To the extent that they're not waiving that

25   privilege, then we agree they need not produce that, but if

24

1    they are intending to assert that affirmative defense, we

2    believe that we are entitled to discovery on it and at the

3    Rule 23 stage to demonstrate that such affirmative defenses

4    can be resolved on a classwide basis.

5         THE COURT:  All right.  Ms. Idalski, are you

6    asserting attorney advice?

7         MS. IDALSKI:  Your Honor, at this stage if we

8    were -- and I don't believe we have -- I'd have to go back

9    and look.  But that has to do with whether or not our client

10   was willful and whether or not at some point -- now, remember

11   there was the Ohio litigation.  So whatever advice they would

12   have gotten there, you know, I'm not sure of.

13        And again, all that goes to willfulness.  I don't

14   see how it relates to precertification discovery whatsoever.

15   So I don't feel that we should have to respond to this at

16   this particular -- particularly at this stage.

17        Now, if there is a -- it's too broad; and if at

18   some point we are going to raise this defense, then you know,

19   we will make that clear.  And of course, we're going to waive

20   the privilege and provide whatever we have in order to

21   support our defense.  But at the precertification stage, this

22   is not relevant.

23        MS. SCHALMAN-BERGEN:  Your Honor, this is

24   Miss Schalman-Bergen again.  I mean in order to deal with

25   this, I would ask that defense counsel stipulate that they're

25

1    not going to raise an advice of counsel defense in any way

2    to -- as an opposition to class certification.

3              THE COURT:  Ms. Idalski, your response?

4              MS. IDALSKI:  Okay.  Well, that's narrower than

5    what's been requested.  And no, we're not.

6              THE COURT:  So no, you're not going to so

7    stipulate?

8              MS. IDALSKI:  That's correct.  No.  I will

9    stipulate we are not doing it at the precertification stage.

10             THE COURT:  So let's get it clear.  The Defendant

11   is saying at precertification they are not going to rely on

12   advice of counsel.  Correct, Ms. Idalski?

13             MS. IDALSKI:  That's correct, Your Honor.

14             THE COURT:  Okay.  All right.  So that seems to

15   moot this request for production.  Later on it might become

16   pertinent.

17             Next, request for production No. 59, this is also

18   disputed.  All documents sufficient to identify GIFS's

19   monthly and yearly labor costs for Pennsylvania class members

20   during the relevant time period.

21             So what are you looking for?  Gross numbers, Miss

22   Schalman-Bergen?

23             MS. SCHALMAN-BERGEN:  Yes, Your Honor.  As part of

24   our unjust enrichment claim, we've alleged that by

25   securing -- by securing the work and efforts of Plaintiff in

1    the Pennsylvania class without paying them overtime, they

2    enjoyed reduced overhead with respect to their labor costs

3    and realized additional earnings and profits to their benefit

4    and to the detriment of Plaintiff.

5         So this request goes squarely to our unjust

6    enrichment claim, and we believe that that information is

7    necessary to demonstrating that the unjust enrichment claim

8    can be brought on a classwide basis.

9         THE COURT:  Okay.  Ms. Idalski, your response?

10        MS. IDALSKI:  Your Honor, how is this related to

11   216(b)?  I just don't see how it's relevant.  So they're

12   going to take our monthly and yearly labor costs and allege

13   that -- what?  It doesn't match what every -- they're not

14   going to have the total sum of all of our employees and all

15   of our contracts nationwide.  So I don't know how they would

16   ever use this information.

17        I mean I think it's overly broad.  If they want to

18   restrict it to Kinder Morgan, which is really the only

19   project at issue as far as we're concerned, again I think

20   it's irrelevant, but we could limit it to that.

21        THE COURT:  So to start, you're going to limit it

22   to Kinder Morgan?

23        MS. SCHALMAN-BERGEN:  Your Honor, if I may, the

24   Pennsylvania class that we're seeking to certify is for all

25   employees who work in Pennsylvania, and that's not just the

27

1    Kinder Morgan project.  So the discovery that we're seeking

2    is for all inspectors who work in Pennsylvania, and defense

3    counsel has identified approximately 158 who worked on

4    various projects.  But the class that we certify is not

5    simply for the one project or the one client.

6              THE COURT:  Ms. Idalski?

7              MS. IDALSKI:  Right, Your Honor, but a class hasn't

8    been certified yet.  This is really going beyond the scope of

9    proving certification.

10             I mean clearly if they're going to get a -- they're

11   going to get this class certified based on 216(b) and Rule

12   23, this seems to be a merit-based argument to me, not a

13   precertification argument.  This is, again, she's talking

14   about unjustly enriched from a merit standpoint, substantive

15   standpoint.  I think it's premature.

16             THE COURT:  Miss Schalman-Bergen, how does this tie

17   in to your class allegations outside of the fact that you've

18   titled your Count 3 alleged unjust enrichment on behalf of

19   the Pennsylvania class?

20             MS. SCHALMAN-BERGEN:  Your Honor, Ms. Idalski is

21   not wrong.  That part of it does go to merit, and I wish that

22   the case law hadn't gone the way it was.  But the Third

23   Circuit has required a look into the merits when deciding

24   class certification.

25             So showing the labor costs and showing that they

1   could be reduced, we're trying to get information to that so

2   we can meet the burden and satisfy the existing case law.

3            THE COURT:  Okay.  And as I said, and I'll say it

4   again, you're going to start with Kinder Morgan, and after

5   you get those documents, if you think there's more that you

6   need, then you're going to tell me.  But Ms. Idalski's going

7   to first produce whatever she has as it relates to Kinder

8   Morgan.

9            MS. SCHALMAN-BERGEN:  Your Honor, may I ask a

10  clarifying question?  Is that specific to this request?

11           THE COURT:  Yes.

12           MS. SCHALMAN-BERGEN:  Okay.  Thank you.

13           THE COURT:  Okay.  That's what she offered.  That's

14  what she's going to produce.  You're going to look at it.

15  Then you can come back to me, and you can tell me, Judge,

16  there's 16 other job sites for these 158 folks in PA.  And

17  based on what I see in Kinder Morgan, this is how it does or

18  doesn't work for me to get a class.  And this is how it does

19  or doesn't pertain to the merits, and this is how I am or am

20  not going to comply with the Third Circuit.

21           So that's how we're going to start.  Because again,

22  a lot of these document requests are too broadly worded under

23  the current rules.

24           Okay.  So that was request 59.  60 is withdrawn.

25  61 is withdrawn.  And 62, any documents identified, referred

 1   to or used in preparing the accompanying second set of

 2   Interrogatories.  That doesn't make sense.  It would seem to

 3   me Answers to Second Interrogatories.  But to that end, to

 4   the extent you're producing documents here and they relate to

 5   the Interrogatory Answer, then you're going to have to

 6   supplement.

 7          So that should take care of these requests for

 8   production.  Relative to depositions, if you two cannot agree

 9   on what is or what is not a fair question under Judge

10   Gawthrop's decision, then and in that event I'm going to have

11   to hire somebody who can referee all of your depositions.

12          And that person will have to be skilled in these

13   class action cases, and he or she will get paid by the hour

14   to say what is or isn't a proper question.

15          Or you can take these depositions like you took

16   Sprick's.  You can leave them open.  You can file a motion.

17   And you can give me a brief, and I'll read the transcript

18   like I read this one all this morning.  And then I'll make a

19   ruling in writing or on the phone and tell you what you can

20   or can't continue to ask, for example, Mr. Sprick.  So you

21   all tell me how you want to proceed.

22          MS. IDALSKI:  Your Honor, I think -- this is

23   Ms. Idalski.  I think we'll try to work this out.  There have

24   been a lot of speaking objections, and that's what got us

25   into trouble in the Sloane deposition.  In a 30(b)(6) I do

1    try to always work it out on the record with counsel just so
2    we can have a record and try to get through it.  I didn't
3    realize that was not what Miss Schalman-Bergen wanted to do.

4           I mean we can always go off the record and
5    conference right then and there.  I think it makes sense.  I
6    mean I'm just trying to understand how it relates to 30(b)(6)
7    and the category.  But if that's not how she wants to do it,
8    then I guess we can go the other way that you're suggesting.

9           THE COURT:  Okay.  Miss Schalman-Bergen, how are we
10   going to do this 30(b)(6) or these other depositions without
11   a plethora of objections?

12          MS. SCHALMAN-BERGEN:  Your Honor, I will be honest.
13   I am concerned about the depositions proceeding and
14   continuing to be disrupted by objections and instructions not
15   to answer based on whether the issue is relevant to class
16   certification.  And I just -- I hate to have to stop the
17   deposition to contact Your Honor or to even leave it open.
18   You know, people spend a lot of time on travel and money, and
19   I just -- I'm worried about the efficiency of doing all of
20   that.

21          Certainly we'll try to work together to reach
22   agreement on it; but after this first deposition, I'm just
23   concerned that the lines of merits versus class are very hard
24   to walk, and that if we have to justify each and every
25   question as being specifically related to class cert., it

1    makes it very difficult for us to conduct a deposition.

2              THE COURT:  Okay.  Any other suggestions anybody

3    has?

4              MS. IDALSKI:  Your Honor, it would help, Your

5    Honor, if the category could be a little bit more specific.

6    401(k) is a good example so that we could take care of

7    objections prior to the deposition and get those all resolved

8    before we go back with Mr. Sprick.  That's one idea.

9              THE COURT:  Well, Ms. Schalman-Bergen, I'm looking

10   at your Schedule A for Mr. Sprick, the 30(b)(6).  And again,

11   it's pretty broad.

12             And so first, you want to know the investigation of

13   all the allegations asserted in the case.  So that to me is

14   potentially work product, attorney-client privileged, and all

15   kinds of other potential objections.

16             Then you want the corporate hierarchy.  As I read

17   Sprick's deposition, you practically named everybody and

18   anybody who ever worked at that company.  Then you want the

19   job titles, job descriptions, job duties and responsibilities

20   of Plaintiff and the class members and any changes in these

21   job duties and responsibilities during the relevant time

22   periods.  Again, pretty broad.

23             But it seems to me that Mr. Sloane's been deposed.  As I

24   He should have been asked about whatever his jobs were when;

25   and if any of these job classifications are in writing, let's

1    just produce the job descriptions and be done with it.

2           Then the manner of compensating Plaintiff, I

3    understood Ms. Kramer at least was asked about those

4    questions.  All policies and practices applicable to

5    Plaintiff and class members, I would suggest that those are

6    producible, Ms. Idalski, if they're in writing.

7           Back to No. 6, we're talking about investigations,

8    discussions, studies and audits.  Again, a FOIA request

9    and/or a docket search might have been helpful.  But when you

10   get into attorney work product, you're going to have

11   problems.

12          Seven is the same.  Legal opinions that were relied

13   on, again, that to me seems to be more in the way of a

14   willfulness inquiry.

15          Exemption, you're going to the defenses here.  I

16   know you're going to tell me that you're trying to find out

17   what is or isn't common.

18          The factual basis for all affirmative defenses and

19   the like, a lot of this is getting broader and broader.  And

20   I think that what you two both need to do is sit down and

21   negotiate this notice of deposition.  And if you can't

22   negotiate it and make it more narrow under the current

23   Federal rules, then and in that event, as I said, I'll have

24   no problem appointing a Special Master that you two can pay

25   hourly to work out these discovery disputes because the Court

1   is not going to be burdened time and again.

2          Another option is I'm going to take the lid off of

3   this case, and there won't be bifurcated discovery, and we'll

4   do all issue discovery all at once, and maybe that's what

5   Plaintiff's ultimate end game is here anyway.

6          So I think you two need to sit down and talk

7   face-to-face and try to work these things out.  Both of you

8   have done these type of cases before.  Neither of you or your

9   clients are babes in the woods.  And so this needs to be

10  worked out rather than take a lot of time from the Court,

11  especially a Court that's currently down three sitting

12  District Judges and soon to be down a fourth.

13         MS. IDALSKI:  Yes, Your Honor.

14         THE COURT:  So when can you two meet and make up a

15  second amended notice of deposition that I can take a look

16  at?

17         MS. IDALSKI:  Your Honor, do you want us to meet in

18  person?

19         THE COURT:  It seems to me that might be the best

20  beneficial because I would doubt that E-mails between you are

21  advancing the ball.

22         MS. IDALSKI:  Yeah.  We've had some extended

23  telephone conversations, but yeah, we could definitely do

24  that within -- I mean I could within the next week or week

25  after.

1          THE COURT:  All right.  And Miss Schalman-Bergen,

2     how about you?  What's your availability?

3          MS. SCHALMAN-BERGEN:  Your Honor, I'm in Pittsburgh

4     on the 15th for another approval hearing.  I don't know if

5     that is a workable location for an in-person meet and confer,

6     but I could do -- we have our final approval hearing at 12:30

7     on Friday the 15th, and I have to take the later flight back.

8          THE COURT:  Ms. Idalski, can you get to Pittsburgh,

9     or can you delegate to Mr. Whitson?

10          MS. IDALSKI:  I cannot do it, Your Honor, but I can

11     delegate to Mr. Whitson or Mr. Hall.

12          THE COURT:  Okay.  And to that end, why don't you

13     two parties through your respective counsel plan on getting

14     together on the 15th and plan to get me a second amended

15     notice of deposition no later than the 20th?  Okay?

16          MS. IDALSKI:  Yes, Your Honor.

17          MS. SCHALMAN-BERGEN:  Yes, Your Honor.

18          THE COURT:  Okay.  Now, there was also all that

19     fussing about Mr. Sloane's deposition.  Is his deposition

20     totally done?

21          MS. IDALSKI:  Your Honor, we have two more hours

22     remaining on Mr. Sloane's deposition that we would like to

23     use as well.  We haven't made that an issue because it's not

24     a priority right now.  But we have -- most of what we need,

25     things went much smoother after we spoke to you.

1          THE COURT:  And Mr. Sloane needs to know that he is

2     a litigant.  He's not an advocate.  He needs to just answer

3     the questions.

4          MS. SCHALMAN-BERGEN:  Your Honor, this is

5     Miss Schalman-Bergen, if I may.  Mr. Sloane sat through an

6     entire day of deposition and went through his entire criminal

7     history and answered incredibly personal questions about

8     himself and his background, and it was incredibly challenging

9     for him.

10          And through that he answered the questions, and I

11     don't believe that he was refusing to respond to questions.

12     We objected to the deposition staying open.  We were

13     available to continue questions.  He was responsive to all

14     the questions.  He was available for the full time.  And he

15     was available for a day, and I believe the rules say one day

16     of seven hours, and he was available for that time.

17          And I would just respectfully request that he not

18     be required to come for another deposition.  He had all of

19     the questions before him, and I think if you reviewed the

20     transcript, you would see that.

21          At the very beginning he gave a little bit of

22     push-back about answering personal questions about his son

23     and his fiance and former marriage, which I think is

24     understandable under the circumstance.  But he throughout the

25     day was responsive.  I don't believe that he was acting as an

1    advocate, but was being forthcoming about his testimony.

2            THE COURT:  Ms. Idalski, anything further on

3    Mr. Sloane?

4            MS. IDALSKI:  Yes, Your Honor.  I'm going to let

5    Mr. Hall respond to this because he was the one that -- I was

6    there, but he was taking the deposition.

7            THE COURT:  All right.

8            MR. HALL:  Very briefly, Your Honor, in the

9    transcript it will speak for itself, but in particular I did

10   ask Mr. Sloane the following question:  I asked him if he

11   would agree to answer my question directly.  And his response

12   was no.  And the transcript will bear out that that's exactly

13   what he did.

14           Now, I understand that he may not have wanted to

15   answer a number of the questions, but given that he is

16   holding himself out as the representative of hundreds, if not

17   thousands, of other individuals in this litigation, his

18   adequacy as a representative is squarely at issue, and we're

19   entitled to a thorough and sifting cross-examination on those

20   topics.

21           Now, as to the full day, I would also note that we

22   did start an hour late because Ms. Schalman-Bergen and

23   Mr. Sloane were not available or not ready at the time.

24   Frankly, I think it was a miscommunication on the deposition

25   notice.

1          But we do have an hour and 50 minutes I think is

2   what was remaining on the transcript at the end of the day.

3   At this point we are not pushing for the immediate

4   reconvening of that deposition.  We are simply saying that at

5   some point it may become necessary for us to take that

6   remaining time.

7          MS. SCHALMAN-BERGEN:  Your Honor --

8          THE COURT:  Miss Schalman-Bergen?

9          MS. SCHALMAN-BERGEN:  Your Honor, I just have to

10  correct the record, that Mr. Sloane was not objecting to it.

11  Mr. Hall -- there was some moments where Mr. Hall's

12  questioning were argumentative, were harassing, and the

13  answer that Mr. Sloane was talking about was that he didn't

14  feel like the question that Mr. Hall was giving him was a yes

15  or no question, and he wanted to expand, and that was it.

16  And he was fully responsive all day long.

17         With respect to the timing, it was our apologies.

18  The deposition notice said 10 p.m. and it said Eastern.  We

19  were in Texas, and I did not read the Eastern time, but it

20  was a misunderstanding, and we would have been available and

21  said that we were available to stay the remainder of the day

22  as late as possible.  We were not going to end the

23  deposition.

24         THE COURT:  Okay.  Well, it sounds like he still

25  has another hour to go.  And it sounds to me like I need to

1    read the transcript.  So one of you can send me the

2    transcript.  And I'll read it is.

3            MR. HALL:  Yes, Your Honor.

4            THE COURT:  Anything else that we need to discuss

5    here today?

6            MS. IDALSKI:  The only other thing, Your Honor, is

7    that we did agree on a mediator.  We're working on --

8            THE COURT:  Yes.  I saw you picked Sally Cimini, as

9    I understand it?  Is that right?  Or do I have a different

10   case in mind?

11           MS. IDALSKI:  No.  You're correct, Your Honor.

12           THE COURT:  As everybody knows, she's a skilled

13   employment lawyer and neutral.  She does a lot of cases.  And

14   she says she's available in April or May.  So at this point

15   in time who's been talking to her?

16           MR. HALL:  I spoke with her -- this is Peter Hall.

17   I spoke with Miss Cimini initially, and we've now circulated

18   proposed dates, and we're simply working to identify a date

19   that works for all parties to meet with Miss Cimini up in her

20   offices in Pittsburgh.

21           THE COURT:  And it works for everybody that we're

22   talking about either April or May?  Is that right?

23           MR. HALL:  Yes, Your Honor.  We understood the

24   Court's local rule about 60 days after the entry of the case

25   management order.  So we're trying to hit that deadline.

1          THE COURT:  So Mr. Hall, what I need you to do,

2    since you finally picked somebody and you're looking at

3    dates, today is April 4.  By April 11 you need to file a

4    notice with me telling me exactly when you're going to go see

5    Ms. Cimini, where you're going, if you're going to be at her

6    office or Schnader's office or the courthouse, who's all

7    going to be there.

8          And to that end, let me stress, Mr. Sloane

9    certainly should be there; and maybe somebody else, anybody

10   else who may have opted in, they might want to be there, too.

11   Lead trial counsel need to be there.  Gulf Interstate needs

12   to have somebody with ultimate authority there, somebody who

13   can respond to whatever the demands are and the like.

14         Further, to the extent that any and all of you can

15   get agreements on things, you should try to get some

16   agreements on things, even if it's not to settle the case.

17         So for example, maybe you can't settle it, but you

18   can agree on some of the facts.  That would at least be

19   helpful.  That would advance the ball.  So whoever is there

20   from Gulf Interstate needs to be knowledgeable about the

21   case, needs to have settlement authority, and also should be

22   in a position to say to Ms. Idalski or Mr. Hall, yep, we can

23   agree to that fact or we can agree to that number.

24         And the other thing that you should do, and I

25   strongly encourage this, although I think Ms. Cimini's letter

1    of engagement spells this out.  You need to call her and have

2    an attorney-only conference call with her prior to the

3    mediation date.  And at that time you can give her an

4    overview of the case, what, if anything, you've done and the

5    like so she has some sense of what's going on.

6             And I trust everybody's agreed this is a mediation

7    and not an Early Neutral Evaluation.  Is that right?

8             MS. IDALSKI:  Yes, Your Honor.

9             THE COURT:  Because we've had a series of issues

10   here in this Court where one side or the other has not fully

11   engaged because they were looking for a mediation, and the

12   other side was looking for an ENE, or early in the process

13   the neutral put a number on the case and, in effect, that

14   caused one party or the other to disengage from the process.

15            So if you haven't done it, there's now about a

16   dozen cases that are written District Court opinions either

17   by Magistrate Judges or District Judges addressing bad faith

18   in the ADR process.

19            So you might want to take a look at those so that

20   you are in compliance and prepared and ready to go.  And if

21   you don't have those citations handy, Mr. Catanese can send

22   you a list of these citations to read.

23            Okay.  Anything else?

24            MS. IDALSKI:  No, Your Honor.  Thank you.

25            MS. SCHALMAN-BERGEN:  Thank you, Your Honor.

1          THE COURT:  Does anybody want a transcript?

2          MS. IDALSKI:  Yes, Your Honor.  This is Annette

3   Idalski.

4          THE COURT:  So the Court will order preparation of

5   the transcript.  Ms. Idalski and her client will pay.

6   Miss Schalman-Bergen, do you or don't you need it for your

7   clients?

8          MS. SCHALMAN-BERGEN:  Yes, Your Honor.  We'll

9   request one, and we can split the costs.

10         THE COURT:  So the costs will be split.  And is

11  there any need to have it expedited?

12         MS. SCHALMAN-BERGEN:  Not from Plaintiff.

13         MS. IDALSKI:  No, Your Honor.

14         THE COURT:  So it will be produced in the normal

15  course.  Okay.  Thank you all.  And we're going to conclude.

16  Have a good afternoon, everybody.  Bye-bye.

17         MS. IDALSKI:  Thank you, Your Honor.

18         MS. SCHALMAN-BERGEN:  Thank you.

19         (Proceedings were concluded at 4:05 p.m.)

20                          - - -

21              C E R T I F I C A T E

22

23         I, Deborah Rowe, certify that the foregoing is
    a correct transcript from the record of proceedings in the
    above-titled matter.

24
    S/Deborah Rowe _____
25  Certified Realtime Reporter